UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EDWARD A. PERUTA, on behalf of himself and other persons similarly situated, Plaintiff, | |
| v. | CIVIL ACTION NO. 3:09-cv-1946 (VLB) |
| HARTFORD PARKING AUTHORITY, et al., Defendants. | August 10, 2010 |

**MEMORANDUM OF DECISION GRANTING DEFENDANT
HARTFORD PARKING AUTHORITY'S MOTION TO DISMISS [Doc. # 12]**

The Plaintiff, Edward A. Peruta, brings this action for an injunction on behalf of himself and other persons similarly situated to enjoin the operation of the Pay and Display Parking Meter System (hereinafter the "P&D System") in Hartford, Connecticut, and to prohibit and restrain the Defendant, Harford Parking Authority (hereinafter the "Parking Authority"), and officers and ticket writers of the Parking Authority, from issuing parking citations and collecting fines and penalties for failure to deposit funds in parking pay stations installed by the Parking Authority as part of the P&D System. The Plaintiff also seeks compensatory and punitive damages. The Plaintiff alleges that the P&D System violates his rights under the Fourth, Fifth, and Fourteenth Amendments and Article VI, Section II of the United States Constitution as enforced by 42 .U.S.C. § 1983, claiming deprivation of his rights to substantive and procedural due process, false arrest, and violations of the supremacy clause and privileges and immunities clause. In addition, the Plaintiff asserts state law claims for violation

of the Connecticut Unfair Trade and Practices Act, Conn. Gen. Stat. §§ 42-110b et seq., and false arrest and malicious prosecution.

Currently pending before the Court is a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted filed under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. In support of the motion to dismiss, the Parking Authority raises an issue of first impression, arguing that it lacks the legal capacity to be sued. For the reasons stated hereafter, the Court agrees that the Parking Authority lacks the legal capacity to be sued in the circumstances of this case, and therefore the motion to dismiss is GRANTED.

## I. FACTS

The Plaintiff's Complaint alleges the following facts. On September 28, 2009, the Plaintiff found a notice attached to his vehicle in the vicinity of 505 Hudson Street in Hartford, Connecticut, alleging that his failure to deposit funds in a parking pay station installed by the Parking Authority as part of the P&D System constituted unlawful parking. The area where the Plaintiff parked contained no regulatory parking signs, and he received no notice that permissive parking regulations applied to the area where he parked. When he parked the vehicle, the Plaintiff reasonably believed that the absence and/or removal of the mechanisms having visible time indicators, coin-receiving and coin actuating mechanisms, all enclosed and mounted on top of posts, otherwise defined as "parking meters" in the Hartford Municipal Code, indicated that parking in that area was unrestricted and unconditional. In fact, the coin-receiving and coin-

actuating mechanisms had been chopped off their posts. The Plaintiff's parking citation was dismissed following a hearing held before a hearing officer on October 28, 2009.

The Plaintiff alleges that the P&D System throughout the City of Hartford, including at 505 Hudson Street, the location where the Plaintiff parked on September 28, 2009, does not meet the notice standards set forth in the Manual on Uniform Traffic Control Devices (MUTCD), the Connecticut State Traffic Commission (STC), and the Hartford Municipal Code.

The Plaintiff filed this action in Connecticut Superior Court on November 4, 2009. The Parking Authority removed the case to this Court on November 30, 2009. The Parking Authority filed the instant motion to dismiss on February 25, 2010, and the Plaintiff filed his opposition on April 27, 2010.

## II.  DISCUSSION

### A.  Standard of Review

The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are "substantively identical." Lerner v. Fleet Bank, N.A., 318 F.3d 113, 128 (2d. Cir. 2003). However, on a motion to dismiss under Rule 12(b)(1), the party invoking the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6). Id. In deciding both types of motions, the Court "must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff." In

3

re AIG Advisor Group Sec. Litig., 309 Fed. Appx. 495, 497 (2d Cir. 2009). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

The Parking Authority argues that because the Connecticut General Statutes have neither expressly nor implicitly granted to Connecticut parking authorities the capacity to be sued, it is not a legal entity amenable to suit. Therefore, the Parking Authority contends, the Plaintiff's Complaint should be dismissed. In opposition, the Plaintiff argues that the capacity to be sued is implicit in the powers granted to the Parking Authority under the Connecticut General Statutes. The Plaintiff further argues that, even assuming *arguendo* there is neither an express nor an implied grant of power found in the state statutes, the municipal code, which can also be said to have organized the Parking Authority, expressly grants the authority to be sued.

### B. Analysis

#### 1. Express Authority Conferred By the Connecticut General Statutes

A party must have an actual legal existence in order to confer jurisdiction on the Court. See Isaac v. Mount Sinai Hosp., 3 Conn. App. 598, 600, 490 A.2d 1024, 1026 (1985). The statutory provision authorizing a municipality to create a

parking authority enumerates the powers that may be granted to such an authority:

> Such parking authority or division shall have the power, *in the name of the municipality*, to (1) create, establish, and expand wherever built by such municipality, off-street parking facilities; (2) acquire by purchase, gift, devise, lease or condemnation, subject to the provisions of section 48-6, real property or any interest therein necessary for or incidental to construction, maintenance, operation, or expansion of off street parking facilities, provided such authority shall not be empowered to take by eminent domain any property from a corporation which has the right of eminent domain of any such corporation; prepare necessary plans and drawings; (3) construct or cause to be constructed parking facilities; (4) maintain and operate parking facilities; (5) establish and collect reasonable off-street parking fees; (6) give, grant, or sell any real property owned by such parking authority to the municipality; dedicate any real property owned by such parking authority to the public purposes for a street or highway; (7) lease parking facilities or such expanded parking facilities as may be provided, and already subject to lease, to any public agency, individual, firm, corporation, or hospital as defined by subsection (b) of section 19a – 490, upon such terms and conditions as the public interest may warrant; and (8) enforce parking regulations in a municipality that has adopted an ordinance under section 7-204a in accordance with the terms of such ordinance.

Conn. Gen. Stat. § 7-204 (2009) (emphasis added).

Absent from this express grant of authority is the power to be sued. Contrastingly, while the legislature does not allow a parking authority to be sued generally, it expressly allows a parking authority to be sued by a revenue bondholder under Conn. Gen. Stat. § 7-208. That section provides:

> Any holder of revenue bonds issued under the provisions of this chapter or of any of the coupons appertaining thereto, except to the extent that the rights

5

> herein given may be restricted by the authorizing ordinance, may, *either at law or in equity, by suit, action, mandamus or other proceeding, protect and enforce all rights under the provisions of the general statutes* or under such ordinance, may enforce or compel the performance of all duties required by this chapter or by such ordinance to be performed by the municipality, the legislative body, *the parking authority or parking division or any officer thereof*, including the fixing, charging and collecting of rates, rentals, fees and charges for the services and facilities furnished by the parking facility or parking facilities.

Id. § 7-208 (emphasis added).

The Plaintiff is not a bondholder; and therefore, the Court holds that the Parking Authority does not have express authority to be sued by the Plaintiff or those on whose behalf he purports to bring his claims in this case.

   2. Implied Authority Found in the Connecticut General Statutes

Having found no express grant of authority to be sued generally in the specified powers of a parking authority created under Conn. Gen. Stat. § 7-204, the Court must next consider whether such authority is implied. The Supreme Court of Connecticut has held that in the absence of an express provision, the authority necessary for the effective exercise of a granted municipal power will be conferred by implication. See City of Hartford v. American Arbitration Ass'n, 174 Conn. 472, 479, 391 A.2d 137, 141 (1978).

There are no Connecticut cases addressing the issue of whether a parking authority created under Conn. Gen. Stat. § 7-204 can be sued. Addressing the separate issue of whether a parking authority has the power to sue, the Connecticut Superior Court decided that the Fairfield Parking Authority had standing to sue because the capacity to sue is necessarily implied from Conn.

Gen. Stat. § 7-204 in order for the parking authority to effectively exercise the express powers granted to it. See Parking Auth. of Fairfield v. Town of Fairfield, No. CV-00-0373937, 2001 WL 527635, at *2-3 (Conn. Super. Ct. May 2, 2001). In analyzing Con. Gen. Stat. §§ 7-202 – 7-207, the court found:

> The power of a municipal authority is measured and limited by the express language in which authority is given or by the implication necessary to enable it to perform some duty cast upon it by express language. Although the legislature did not expressly grant parking authorities the power to sue in § 7-204, such power may be implied as necessary to enable the authority to perform the powers it is expressly granted, such as the power to sell or lease real property to the municipality and the power to acquire and own land. . . . Moreover, § 7-202 expressly provides that a parking authority is a distinct body corporate and politic. If an administrative subdivision of a municipal government constitutes a distinct body politic under state law, it is a separate entity with the power to sue and be sued.

Id. (internal citations omitted).

In the instant case, while the Hartford Parking Authority is created under the same statutory provisions as the Fairfield Parking Authority, the challenge to its legal capacity to be subject to suit distinguishable. The Fairfield court was faced with the distinct and separate issue of whether or not a parking authority has the capacity to sue in the context of an indemnification action brought by the parking authority against the town for the costs incurred in defending and settling a negligence action. This Court, on the other hand, must address the capacity for the Defendant to be sued under 42 U.S.C. § 1983 for alleged constitutional violations. Although the Fairfield court broadly stated that a parking authority has the power to both sue and be sued, the language opining

7

that an authority has the power to be sued is dicta because it was not an issue raised in that case and it was not necessary to the ultimate holding of the case. While it may well be true that a parking authority must have the power to sue the municipality for indemnification in order to obtain funds necessary to effectively exercise its duties, it does not follow from this reasoning that a parking authority must also have the power to be sued for alleged constitutional violations arising out of its exercise of powers conferred upon to act in the name of the municipality which created it.

A close reading of Conn. Gen. Stat. §§ 7-202 – 7-207 demonstrates that the legislature did not intend to permit suits such as the present action against parking authorities. As noted by the Connecticut Superior Court in <u>Fairfield</u>, and as stated by the Connecticut Supreme Court in <u>DiLieto v. Cnty. Obstetrics & Gynecology</u>, Nos. 17471, 17744, 2010 WL 2471998, at *18 (Conn. June 29, 2010), "in cases in which more than one statutory provision is involved, we presume that the legislature intended those provisions to be read together to create a harmonious body of law . . . and we construe the provisions, if possible, to avoid conflict between them." <u>See also</u> <u>Doe v. Norwich Catholic Diocesan Corp.</u>, 279 Conn. 207, 216, 901 A.2d 673, 682 (Conn. 2006) (explaining that there "is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous").

As noted above, a parking authority is not expressly granted the authority to be sued under Conn. Gen. Stat. § 7-204; however, Conn. Gen. Stat. § 7-208 allows a parking authority to be sued by revenue bond holders. Read together as

a coherent body of law, these two provisions demonstrate an intention to limit a parking authority's exposure to suit to claims brought by revenue bond holders. Moreover, the legislature explicitly grants the authority to both sue and be sued to other municipal bodies within the Connecticut General Statutes. See e.g., Powers of Municipal Electric Energy Cooperatives, Conn. Gen. Stat. § 7-233e (b)(2) (2009); Powers of Special Service Districts, Conn. Gen. Stat. § 7-339n (2009); Powers of Housing Authorities, Conn. Gen. Stat. § 8-44(a) (2009); see also Luysterborghs v. Pension and Retirement Bd. of City of Milford, 50 Conn. Supp. 351, 354-55, 927 A.2d 385, 388 (Conn Super. Ct. 2007) ("The General Statutes do not contain a provision that generally establishes all municipal departments, boards, authorities and commissions as legal entities that operate separately from the municipality itself. Instead, where the legislature has intended to grant such legal status to a department or board, it has done so explicitly.") (internal citations omitted). Since the legislature acts with notice of its prior enactments, the omission of such language in the statutory provisions at issue must be viewed as intentional. See Doe, 901 A.2d at 679 ("The intent of the legislature, as this court has repeatedly observed, is to be found not in what the legislature meant to say, but in the meaning of what it did say.").

    Having distinguished the issue at hand from that addressed in the Fairfield case, this Court will now look to whether or not the capacity to be sued must necessarily be implied in order for the Parking Authority to effectively exercise the express powers granted to it by statute. Given that under Conn. Gen. Stat. § 7-204, a parking authority is entitled to take all actions "in the name of the

9

municipality," any aggrieved party other than a revenue bondholder may sue the municipality itself for legal redress.  See also City of Middletown v. F.L. Caulkins Auto. Co., 19 Conn. Supp. 45, 46-47, 109 A.2d 888, 889-890 (Conn. Super. Ct. 1954) (explaining that contrary to the special act used to create the Middletown Parking Authority, a parking authority, when created by the municipality pursuant § 7-204, has powers given by that section to act "in the name of the municipality").  The Plaintiff has not offered any explanation as to why an action against the municipality would be insufficient to redress the constitutional violations he alleges, or why the parking authority must have the ability to be sued directly in order to effectively exercise the subject statutory duties.  Therefore, the Court finds that the capacity to be sued is not necessarily implied in order for the express offending powers of a parking authority to be exercised effectively.

### 3. Express Grant of Authority in Hartford Municipal Code

Contrary to the Connecticut General Statutes, the Municipal Code of the City of Hartford grants the Parking Authority the power to both sue and be sued, which the Plaintiff contends gives it a separate legal identity from that of the municipality:

> The [parking] authority shall further have the power to: contract and be contracted with; *to sue and be sued*; to make and from time to time amend and repeal bylaws, rules and regulations not inconsistent with general law to carry out its purposes; and to adopt a corporate seal and alter it at its pleasure . . . .

Hartford, Conn., CODE ch. 10, § 10- 14(3)(a) (2009) (emphasis added).

The state legislature explicitly provides for the manner in which a parking authority created pursuant to the Connecticut General Statutes is to operate and

the powers with which it is endowed; therefore, this attempt by the city to create a parking authority in a manner contrary to that guidance is a misuse of its power. When the state legislature manifests an intention to occupy a field of regulation either expressly or implicitly, any local ordinance that conflicts with that regulation is preempted by the state statute. See Kaluszka v. Town of E. Hartford, 46 Conn. Supp. 588, 591, 760 A.2d 1282, 1285 (Conn. Super. Ct. 1999); see also Sheehan v. Altschuler, 148 Conn. 517, 521, 172 A.2d 897, 899 (1961) (noting that when an ordinance and a state statute conflict, the statute prevails because "it is a fundamental principal that an ordinance is inferior in status and subordinate to the laws of the state"). In order to determine if an ordinance conflicts with a state law, the purpose and policy of the statute must be considered, along with the degree to which the ordinance frustrates those objectives. Id.

The purpose of the legislation allowing for the creation of parking authorities is to create a body that acts as part of the municipality and aids the city in exercising its traffic regulation function. Municipalities are given the power to "regulate and prohibit, in a manner not inconsistent with the general statutes, traffic, the operation of vehicles on streets and highways, off-street parking and on-street residential neighborhood parking areas in which on-street parking is limited to residents of a given neighborhood, as determined by the municipality." Conn. Gen. Stat. § 7-148(7)(B). The state legislature permits this municipal power to be delegated to a parking authority:

> Any consolidated town and city in which (1) was consolidated in 1896, (2) has a mayor and a court of

11

> common council, and (3) has a population of more than one hundred thousand, may, by ordinance adopted by the court of common council, authorize the parking authority of such consolidated town and city to (A) enforce the parking regulations of such consolidated town and city, and (B) receive the amount remitted to the town and city for parking regulations under subsection (b) of section 51-56a.

Conn. Gen. Stat. § 7-204a (2009).

Hartford was incorporated by act of the general court pursuant to the Connecticut Constitution of 1639. Therefore, the Parking Authority is created in accordance with Conn. Gen. Stat. § 7-204a, and is enforcing regulations on behalf of the city of Hartford, and not as its own enterprise.

In light of this provision, and the fact that all powers are expressly granted "in the name of the municipality," it is apparent that like other sub-units or agencies created to perform municipal functions, parking authorities are in place to aid a city in exercising its traffic regulation function. See, e.g., Hasfal v. City of Hartford, No. 3:06cv55 (CFD), 2007 WL 2009790, at *3 (D. Conn. July 6, 2007) (holding that a police department "is a sub-unit or agency of a municipal government through which the municipality fulfills its policing function"). In addition, the legislative history of the relevant statute reveals that, despite being defined as a body corporate and politic, a parking authority, in all practical effect, is intended to act as an extension of the municipality. This purpose is reflected in the following statements:

> The change is a limited one or the extension of the power of the authorities is a limited one, I think it's brought out well in the statement and purpose of the Bill, to allow parking authorities to convey land to municipalities for the purpose of establishing streets, the same as desirable, and giving parking facilities to

> municipalities for free parking. It's apparent from the Bill that the conveyances of property would be limited to those two purposes, and that a parking authority would not be going into business of buying and selling land.

*An Act Concerning Conveyance of Land by Parking Authorities: Hearing on S. B. No. 757, Conn. J. Standing Comm. Hearings, Judiciary, Pt. 2,* 1959 Sess., p. 655 (statement of Sen. McCarthy).

> Mr. Speaker, this bill would have the effect of allowing a parking commission to build off-street parking facilities and lease, rent, or sublet them to various individuals or businesses. Particularly in New Britain it would relieve a problem that we have in a congested area, not only for the City, but for the New Britain General Hospital. This is the purpose for which I am particularly interested in it, and I urge its passage.

*An Act Concerning Powers of Parking Authorities on H. B. No. 6291*, 13 H.R. Proc., Pt. 8, 1969 Sess., p. 3583 (statement of Rep. Morris).

Furthermore, the legislative history also shows that policy concerns led the legislature to reject a home rule structure for parking authorities. Therefore, while allowing cities to forgo the creation of a parking authority, the legislature intended that the state retain ultimate control of the limits and bounds of the powers of any parking authority created pursuant to state statute:

> [The prior home rule bill] was one of quasi-political ideals. We did not want to put a referendum on it, on this kind of legislation. This is permissive legislation. They don't have to adopt a parking authority and if the pressure is great enough and that parking authority is deemed necessary, the governing body will adopt this means of creating an authority.

*An Act Enabling Municipalities to Provide Parking Facilities: Hearing on S. B. No. 775,* 5 S. Proc., Pt. 2, 1953 Sess., p. 778 (statement of Sen. Lemaire).

The Hartford Municipal Code grants a separate legal identity to the Defendant, which the state legislature does not permit, and is in fact contrary to the very limited legal capacity that the state legislature has granted to parking authorities. The Court holds that this grant of authority by the city contravenes the intentions of the legislature and frustrates its objective of creating a parking authority that acts as a part of the municipality. Therefore, the Parking Authority must be dismissed as a Defendant in this action. See Nicholson v. Lenczewski, 356 F. Supp. 2d 157, 164 (D. Conn. 2005) (dismissing 42 U.S.C. § 1983 claims against a municipal police department because a police department is not an independent legal entity subject to suit under section 1983).

## IV. CONCLUSION

Based on the foregoing reasoning, the Defendant's motion to dismiss [Doc. # 12] is GRANTED. The Clerk is directed to terminate the Hartford Parking Authority as a Defendant in this action.

The Court further notes that the Plaintiff has not identified and served the individual Defendants within 120 days as required by Fed. R. Civ. P. 4(m). In fact, service has not been made in the 280 days that this case has been pending, even though the Plaintiff unilaterally set a return date of November 17, 2009 in the summons. See Doc. #1, Exh. A. Service on the Hartford Parking Authority is insufficient to effect service on the individual Defendants because these Defendants are named in their individual capacities only. See Fed. R. Civ. P. 4(e) (describing means by which service on an individual may properly be effectuated); see also Davis v. Mora, 587 F. Supp. 2d 422, 425-26 (D. Conn. 2008)

(holding that when a plaintiff sues a state employee in her individual capacity, the plaintiff must serve process on the defendant by "leaving a true and attested copy of [process], including the declaration or complaint, with the defendant, or at his usual place of abode, in this state"). Therefore, the Plaintiffs are directed to serve the individual Defendants, and to file proof of service, within 28 days of the date of this Order. Failure to provide proof of service will result in dismissal of all claims against the individual Defendants. See, e.g., Allan v. City of New York, 386 F. Supp. 2d 542, 547 (S.D.N.Y. 2005) ("[A] court may, *sua sponte*, dismiss a complaint for failure to serve process, provided that the plaintiff is given notice that the complaint can or will be dismissed on that ground.").

            IT IS SO ORDERED.

            _____/s/_____
            Vanessa L. Bryant
            United States District Judge

Dated at Hartford, Connecticut: August 10, 2010.